**AFFIRMED; Opinion Filed July 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00130-CV

**KELLEY/WITHERSPOON, LLP, KEVIN KELLEY, AND NURU WITHERSPOON,**
**Appellants/Cross-Appellees**
**V.**
**ARMSTRONG INTERNATIONAL SERVICES, INC., Appellee/Cross-Appellant**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-01907-E**

## MEMORANDUM OPINION
Before Justices Fillmore, Myers, and Evans
Opinion by Justice Evans

This is an appeal from a judgment following a jury trial in a legal malpractice action.

Asserting three issues, Kelley/Witherspoon, LLP, Kevin Kelley, and Nuru Witherspoon contend

the evidence is legally and factually insufficient to support the damages awarded and the finding

of negligence against Nuru Witherspoon individually. Armstrong International Services, Inc.

presents a single issue in a cross-appeal arguing the trial court erred by excluding the jury's

award of attorney's fees from the judgment.

### FACTUAL BACKGROUND

Armstrong International Services, Inc. ("AIS") is an audio/visual and computer service

provider for trade shows, conventions, and seminars. One of AIS's clients was a nonprofit

organization called Blacks in Government ("BIG"). A dispute arose between AIS and BIG over

what AIS claimed was an unpaid balance for services it provided at a 2004 conference in Washington, D.C. AIS hired Kelley/Witherspoon to file suit against BIG to pursue the claim.

On March 20, 2007, Kevin Kelley sent a demand letter to BIG. BIG responded denying any liability. Kelley then filed suit against BIG and its president, Gregory Reeves, in Dallas County district court. The suit was eventually dismissed for want of prosecution. Kelley refiled the suit and BIG filed a special appearance on June 8, 2008. Kelley conducted no discovery and, approximately one year later, sent AIS a letter stating that he intended to withdraw as counsel.

BIG set its special appearance for a hearing on June 26, 2009. Kelley then filed a motion to withdraw as counsel and set the motion to withdraw for a hearing on June 25. The trial court denied Kelley's motion to withdraw and proceeded with the special appearance hearing the next day. No response to the special appearance was filed and no one from the firm attended the hearing. The special appearance was granted, and AIS's claims against BIG were dismissed. The claims against Reeves were dismissed by summary judgment.

On March 17, 2011, AIS filed this suit against Kelley/Witherspoon, Kevin Kelley, and Kelley's partner, Nuru Witherspoon (collectively "Kelley/Witherspoon") alleging that they committed numerous acts of negligence causing AIS to lose its case against BIG. After hearing the evidence, the jury found in favor of AIS and awarded it $210,000 in damages. The jury apportioned 95% of the responsibility for AIS's damages to Kelley and 5% to Witherspoon. The jury also found that Kelly's conduct was grossly negligent and awarded $250,000 in punitive damages. Finally, the jury found that $80,000 was a reasonable fee for AIS's attorneys in this case.

AIS moved for entry of judgment on the jury's verdict, but did not request judgment on the award of attorney's fees. The trial court signed a judgment ordering that AIS recover $210,000 in damages from Kevin Kelley and Kelley/Witherspoon, jointly and severally, along

with $28,105.47 in pre-judgment interest and post-judgment at a rate of 5% per annum. It was further ordered that Nuru Witherspoon was severally liable to AIS for $10,500 of the damages owed by Kelley and Kelley/Witherspoon plus pre-judgment interest in the amount of $1,405.27 and post-judgment interest at the rate of 5% per annum. Kelley was ordered to pay the $250,000 in exemplary damages individually along with post-judgment interest on that amount. Finally costs of court were assessed against all the defendants jointly and severally. This appeal followed.

## ANALYSIS

### A. Preservation of Error

In their first issue on appeal, Kelley/Witherspoon contends the evidence is legally and factually insufficient to show that AIS suffered any damages because there was no evidence that a judgment against BIG would have been collected. They argue that AIS was required, and failed, to provide evidence of what assets owned by BIG could be reached to satisfy a judgment.

AIS first responds that Kelley/Witherspoon did not preserve this issue for appeal because it failed to specifically argue the issue of collectibility in the trial court below. Legal and factual insufficiency challenges must be preserved in the trial court. *See Dallas Cnty v. Crestview Corners Car Wash*, 370 S.W.3d 25, 55–56 (Tex. App.—Dallas 2012, pet. denied) (op. on reh'g); *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337–38 (Tex. App.—Dallas 2011, pet. denied). To preserve a legal sufficiency challenge following a jury trial, the appellant must raise the issue either through (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991). To complain about the factual sufficiency

of the evidence in a jury trial, the appellant must present the issue to the trial court in a motion for new trial. *Id*. at 510.

In this case, Kelley/Witherspoon filed a motion for new trial asserting that the evidence was legally and factually insufficient to support a finding of negligence because "there was no evidence . . . that [AIS] suffered any damages as a result of any breach [of duty]." The jury charge contained only one damages question and only a single element for the jury to consider when determining what damages to award. The charge asked the jury to determine "[t]he amount, if any, that Armstrong International Services, Inc. would have recovered and collected if its claim against Blacks in Government had been properly prosecuted."

Generally, a sufficiency objection to a single jury issue is sufficient to preserve error without further detail. *See Arkoma Basin Expl. Co., Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). The "cardinal rule" is that the objection must be clear enough to give the trial court an opportunity to correct the alleged error. *Id*. Because the jury charge contained only one damages question with a single element of damages, Kelley/Witherspoon's objection that the evidence was legally and factually insufficient to support the damages finding could only be construed as a challenge to the evidence of what amount AIS would have recovered and collected from BIG. This is the same challenge they raise on appeal. We conclude Kelley/Witherspoon sufficiently preserved error on this issue.

## B. Legal and Factual Sufficiency

In reviewing the legal sufficiency of the evidence, we credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 770 (Tex. 2010) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822, 827 (Tex. 2005)). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Haggar Clothing Co. v. Hernandez,* 164 S.W.3d

386, 388 (Tex. 2005) (per curiam); *see also City of Keller,* 168 S.W.3d at 810. The final test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller,* 168 S.W.3d at 827. In conducting a factual sufficiency review, we weigh all the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). We view the evidence in a neutral light and set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The evidence of collectibility submitted by AIS was presented by AIS's expert Douglas Brady. Brady testified that the judgment AIS would have recovered against BIG was "very collectible." As support for this opinion, Brady stated that BIG was a large national organization that owns property, including real estate, and "collects tens of thousands of dollars each year from its members." Brady further stated that he examined the form 990 annual returns BIG filed with the IRS for the years 2008, 2009, and 2010 which were available to the public. According to Brady, in 2008, BIG reported over $3 million in revenue as well as owning over $1.2 million in real estate and having $838,000 in cash in the bank. The 2009 and 2010 filings showed "similar amounts." Brady testified he would have "immediately garnished" the cash in the bank which would have "more than paid for the judgment" that he calculated would have been in the amount of $217,980.45.

Kelley/Witherspoon first argues this evidence is legally insufficient because the testimony is conclusory and speculative and, therefore, not competent to support the judgment. Expert testimony is conclusory and speculative when it has no factual substantiation in the record. *See DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 905 (Tex. App.—Dallas 2010, no pet.). The expert must explain how he reached his conclusion. *See U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 172 (Tex. App.—Dallas 2008, no pet.).

The conclusion to which Brady testified was that any judgment against BIG would have been "very collectible." The remainder of his testimony concerned the factual basis for this conclusion. Brady testified he reached his conclusion by examining the IRS form 990 returns filed by BIG for the years 2008 through 2010. As Kelley/Witherspoon concedes, form 990 requires the filing organization to report "extensive financial information" including the organization's assets and liabilities.[1] According to Brady, BIG's filings showed millions of dollars in revenue and over $800,000 in cash. Brady testified that he could have reached the cash in the bank to satisfy the judgment through a garnishment action. Brady's conclusion that a judgment against BIG would be collectible was, therefore, supported by factual financial information.

Kelley/Witherspoon suggests that Brady's testimony is conclusory because the IRS forms themselves were not put into evidence. Kelley/Witherspoon cites no authority for this argument. Although supporting documentation may affect the weight to be given to testimony regarding financial information, it is generally not necessary to produce the supporting documents in court. *Cf. Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 149 (Tex. App.—Dallas 2012, no pet.) (not necessary to submit into evidence documents supporting opinions or estimates of lost profits).

Kelley/Witherspoon next argues that Brady's testimony was both legally and factually insufficient because AIS was required to show not only what money and property BIG had, but also its financial liabilities. In support of this argument, Kelley/Witherspoon relies entirely on the Texas Supreme Court's opinion in *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. and Research Corp.*, 299 S.W.3d 106 (Tex. 2009). In *Akin, Gump*, the court held that the

---

[1] Although AIS did not offer the specific forms Brady relied upon into evidence, Kelley/Witherspoon asks us to take judicial notice of the standard form 990 used in 2008 and the information it required. TEX. R. EVID. 201(b), (f).

collectibility of a judgment may be shown in a number of ways. *Id*. at 114. Generally, the amount of an underlying judgment that would have been collectible is "the greater of either (1) the fair market value of the underlying defendant's net assets that would have been subject to legal process for satisfaction of the judgment as of the date the first judgment was signed or at some point thereafter, or (2) the amount that would have been paid on the judgment by the defendant or another, such as a guarantor or insurer." *Id*. The court does not state that any specific type of evidence is necessary to make this showing.

Kelley/Witherspoon focuses on the court's use of the term "net assets" to argue that AIS was required to present proof of BIG's liabilities as well as its assets. Although collectibility is based on the value of the assets that may be reached to satisfy the judgment, nothing in *Akin, Gump* requires the plaintiff to put on specific proof of the underlying defendant's financial liabilities. It is sufficient that the expert bases his opinion on relevant information showing the underlying defendant's net assets or other monetary sources, such as insurance, that are reachable to satisfy the judgment in making his determination of collectibility. In this case, AIS's expert, Brady, testified that he examined BIG's IRS filings. These filings included extensive information about both BIG's assets *and* its liabilities; i.e. the company's net assets. Based on his examination of the filings, Brady affirmatively testified that BIG had, among other things, enough cash subject to garnishment to satisfy a judgment in favor of AIS.

Kelley/Witherspoon speculates that the form 990 returns upon which Brady relied might have shown that BIG was insolvent or that the assets about which he testified were subject to prior liens. In other words, Kelley/Witherspoon speculates that Brady's testimony about collectibilty is incorrect. The firm had the right to cross-examine Brady about the facts to which he testified and the conclusion he drew from them. It chose not to do so. It also chose not to

submit any contradictory evidence. Speculation that Brady's uncontradicted testimony was incorrect does not render the evidence insufficient.

Finally, Kelley/Witherspoon contends the evidence is insufficient because Brady's testimony concerning BIG's assets in 2008 is not relevant to the time period during which a judgment against BIG would have been rendered and subject to execution. Evidence that the defendant in the underlying suit could have satisfied a judgment at times prior to the time a judgment is signed generally will not be relevant to, or probative of, the judgment's collectibility. *Id*. at 113. Such evidence is sufficient, however, if the evidence also shows "a reasonable probability that the underlying defendant's financial condition did not change during the time before a judgment was signed in a manner that would have adversely affected collectibility." *Id*. at 114.

Brady testified that a judgment against BIG would likely have been rendered in September 2009. Brady further testified that BIG's 2008 IRS filings showed the company had enough assets that could be reached to satisfy the judgment and that the 2009 and 2010 filings showed "similar amounts." This testimony shows a "reasonable probability" that BIG's financial condition did not change during the time before the judgment would have been signed in a manner that would have adversely affected collectibility. Kelley/Witherspoon argues, again, that Brady's testimony amounts to no evidence under *Akin,Gump* because he did not provide details about BIG's financial liabilities in 2009 and 2010. As stated above, while *Akin, Gump* requires that proof of collectibility be based on net assets or other sources of money available to satisfy the judgment, nothing in the opinion requires the plaintiff to put on detailed evidence of the underlying defendants financial liabilities as part of its burden of proof.

We conclude the evidence of collectibility presented by AIS was legally and factually sufficient to support the judgment. We overrule Kelley/Witherspoon's first issue.

## C.  Measure of Damages/ Contingent Fee Agreement

In their second issue, Kelley/Witherspoon contends there was insufficient evidence of the proper amount of damages.  They argue that the damage award is excessive because it does not account for the amount AIS would have paid in contingent attorney's fees.  Kelley/Witherspoon concedes that this court has already held that a malpractice defendant is not entitled to a reduction in damages because of a contingent fee agreement in the underlying case.  *Akin, Gump, Straus, Hauer & Feld,L.L.P. v. Nat'l Dev. and Research Corp.*, 232 S.W.3d 883, 897-98 (Tex.App.—Dallas 2007), *rev'd on other grounds*, 299 S.W.3d 106 (Tex. 2010).  We decline to revisit the issue here.  We resolve Kelley/Witherspoon's second issue against it.

## D. Negligence of Nuru Witherspoon

In the third issue, Nuru Witherspoon challenges the sufficiency of the evidence supporting the judgment against him individually.  The jury assigned Witherspoon 5% of the responsibility for AIS's injuries.  Witherspoon contends there is legally and factually insufficient evidence to show that he was negligent or that any act by him caused AIS injury.  In making this argument, Witherspoon points to how little he did in the case.  But the focus of AIS's malpractice allegations is exactly that; the failure of either Kelley or Witherspoon to take the necessary actions to protect AIS's interests in the underlying suit.  A claim for malpractice may be based upon an attorney's inaction as well as his actions.  *See Wright v. Lewis*, 777 S.W.2d 520, 522 (Tex. App.—Corpus Christi 1989, writ denied).

The evidence in this case showed that Witherspoon's name as well as Kelley's was on the pleadings filed on behalf of AIS.  Therefore, although Witherspoon may not have been the attorney in charge of the case, he was an attorney of record representing AIS.  *See Block v. Providian Nat'l Bank,* No. 05–03–00734–CV, 2004 WL 1551485, at *3 (Tex. App.—Dallas, July 12, 2004, pet. denied) (mem. op., not designated for publication) (rules contemplate more

than one attorney of record). There is no dispute that neither Kelley nor Witherspoon responded to BIG's special appearance and that this failure resulted in the dismissal of AIS's claims against BIG. Accordingly, we conclude there is legally and factually sufficient evidence to support the judgment against Witherspoon individually. We resolve the third issue against Witherspoon.

**E. DTPA Attorney's Fees**

In its issue on cross-appeal, AIS contends the trial court erred in excluding the jury's award of attorney's fees under the Texas Deceptive Trade Practices Act from the judgment.[2] First, we note that AIS's motion for judgment on the jury's verdict does not request entry of judgment on the attorney's fees award. Nor did AIS file any motions in the trial court after the judgment was signed challenging the absence of an award of attorney's fees. Accordingly, AIS did not preserve error on this issue. *See Emerson v. Tunnell*, 793 S.W.2d 947, 948 (Tex. 1990) (error preserved as to trial court's failure to render judgment on damages awarded by jury where cross-appellant filed motion for judgment for recovery of damages based on jury's verdict).

In the alternative, AIS's DTPA claim appears to be nothing more than an attempt to recast its professional negligence claims under an alternate theory for the purposes of recovering its attorney's fees. "Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *See Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied). We review questions of law de novo. *Id*.

Texas courts do not allow plaintiffs to convert professional negligence claims into claims for fraud, breach of contract, breach of fiduciary duty, or violation of the DTPA. *Id*. at 693.

---

[2] Kelley/Witherspoon contends we have no jurisdiction over AIS's cross-appeal because its notice of appeal was untimely under rule 4.1 of the Texas Rules of Appellate Procedure. This same argument was made by Kelley/Witherspoon in response to AIS's motion for reconsideration of this Court's denial of its motion for extension of time to file a notice of appeal. By order dated April 2, 2014, we granted AIS's motion for reconsideration and deemed its notice of cross-appeal timely for jurisdictional purposes. We decline to revisit this issue.

This rule against "fracturing" negligence claims is to prevent plaintiffs from dividing a claim that sounds only in negligence into other claims to gain a tactical advantage. *See Law Office of Oscar C. Gonzalez, Inc. v. Sloan*, 447 S.W.3d 98, 108 (Tex. App.—San Antonio 2014, pet. filed). If the gist of the plaintiff's claim is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

AIS alleged the following facts in support of both their professional negligence claim and their DTPA claim:

A. Defendants failed to keep AIS informed regarding their matter.

B. Defendants sued BIG for the wrong amount owed.

C. Defendants failed promptly to serve BIG and Mr. Reeves, instead allowing the case to be dismissed and necessitating a refiling of the case.

D. Defendants filed a petition in a breach of contract case that named improper parties, requested discovery under both level 2 and level 3 of Rule 90 of the Texas Rules of Civil Procedure, stated that 'Plaintiffs are the only heirs of the Decedent, there is no legal representative and none is required," asserted a cause of action for fraud, sought exemplary damages, and failed to seek recovery of attorney's fees.

E. Defendants failed to investigate AIS' claims, failed to conduct discovery, and failed to respond to discovery served upon them.

F. Defendants failed to file a response to BIG's special appearance and failed to investigate the factual and legal bases for response to such special appearance.

G. Defendants failed to inform AIS that BIG filed a special appearance, that a hearing was set on that special appearance, that they failed to respond to or attend the hearing on the special appearance, and that the court granted the special appearance.

H. Defendants failed to inform AIS that it could refile its claims against BIG in a District of Columbia Court or what statute of limitations was applicable to AIS' claims.

I. Defendants distributed confidential information regarding AIS in an unauthorized press release.

J. Defendants improperly withdrew from representation of AIS in the case.

–11–

With the exception of item "I," the gist of these allegations is solely professional negligence. To prevail, AIS was required to prove it would have been entitled to judgment in its favor in the underlying case. A DTPA claim does not require such proof. *See Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998). As for item "I," the evidence presented at trial was that Kelley/Witherspoon issued a press release concerning AIS's financial condition as a trial tactic without the company's permission. AIS does not allege, nor did it seek damages for, any injury caused by the press release separate and apart from the loss of a judgment in its favor in the underlying case. Absent any evidence that the press release caused some damages other than or in addition to those cause by Kelley/Witherspoon's professional negligence, we conclude this allegation cannot support a separate claim under the DTPA. *Id.*

AIS argues that Kelley/Witherspoon has not challenged the jury's finding that its actions were unconscionable and, therefore, this finding is binding and allows it to recover under the DTPA. As stated above, however, the determination of whether a plaintiff's allegations sound only in professional negligence, regardless of how they are labeled, is a matter of law for the court. *See Gruber*, 241 S.W.3d at 692. Accordingly, the jury's finding has no bearing on our analysis. We resolve AIS's issue against it.

**CONCLUSION**

Based on the foregoing, we resolve Kelley/Witherspoon's and Nuru Witherspoon's issues against them. We also resolve AIS's issue on cross-appeal against it. We affirm the trial court's judgment.


/David W. Evans/
DAVID EVANS
JUSTICE

140130F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KELLEY|WITHERSPOON, LLP, KEVIN KELLEY, AND NURU WITHERSPOON, Appellants

No. 05-14-00130-CV    V.

ARMSTRONG INTERNATIONAL SERVICES, INC., Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-11-01907-E.
Opinion delivered by Justice Evans. Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of July, 2015.